## LANASA FRUIT STEAMSHIP & IMPORTING CO., Inc., v. UNIVERSAL INS. CO.

No. 5801.

District Court, D. Maryland.

June 12, 1936.

ance issued by the defendant to the plaintiff covering a cargo of bananas shipped aboard the Norwegian steamship Smaragd in July, 1935, from Cuba to Baltimore. The vessel was stranded coming up Chesapeake Bay, and before she could be floated, the entire cargo of bananas became overripe and rotted, resulting in total loss. The plaintiff furnished the requisite proof of loss, but defendant has refused to pay on the ground that the direct cause of the damage to the cargo was the delay resulting in the stranding, and that such is not covered by the policy in suit.

The defendant has filed general issue pleas and two special pleas, the first setting up a rider on the policy which, however, was canceled prior to the stranding, under the terms of which the policy was made expressly to cover damage in consequence of delay due to stranding and various other causes. The second special plea set up a warranty contained in the policy exonerating the defendant from liability from certain damage referred to in the warranty. The plaintiff has joined issue on the general issue pleas and has demurred to the special pleas. A hearing has been had on the demurrer, the principal grounds of which are set forth in the course of this opinion.

I reach the conclusion that the demurrer must be overruled in this case because I think the first special plea is good. I find it unnecessary to rest this case on any other ground than that the rider, which was in the policy originally, but was struck out prior to the stranding which is the cause of the present controversy, is the best, and, I think, conclusive, evidence of the interpretation which must be given to the other clauses of the policy, to wit, an interpretation in favor of the defendant.

Because of this view which I take of the case, it becomes unnecessary for me to go into any lengthy analysis or consideration of differences, if such there be, between the British and American authorities. I will say, parenthetically, however, that it seems to me to be very clearly established that unless such liability is expressly assumed in a policy of this kind, an insurance company is not liable for loss due to the inherent nature of the goods, or to delay; and, as I think the defendant has properly stated, this principle is applicable where perishable goods have wholly or partially deteriorated through delay in the voyage, even though such delay was direct-

George Forbes and Henry L. Wortche, both of Baltimore, Md., for plaintiff.

Ritchie, Janney, Ober & Williams, of Baltimore, Md., and Bigham, Englar, Jones & Houston, of New York City (Frank B. Ober and Southgate L. Morison, both of Baltimore, Md., and Martin Detels, of New York City, of counsel), for defendant.

WILLIAM C. COLEMAN, District Judge.

The question presented involves the interpretation of a policy of marine insur-

ly caused by perils of the sea. I believe that to be not only the weight of the English authorities, but to be consistent with such American authorities as there are, with the possible exception of The Corsicana Case (Brandyce v. United States Lloyds, Inc.), 207 App.Div. 665, 203 N.Y. S. 10, 1924 A.M.C. 365; Id., 239 N.Y. 573, 147 N.E. 201. See Taylor v. Dunbar, L.R. 4, C.P. 206; Pink v. Fleming, L.R. 25, Q. B.D. 396; Perry v. Cobb, 88 Me. 435, 34 A. 278, 49 L.R.A. 389.

But, as I have just stated, I do not think it is necessary for me to attempt to determine whether the decision in the Corsicana Case is directly contrary to the weight of authority either in England or in this country, because I rest the present case on the narrower ground just indicated.

The rider, which was struck out, unquestionably covered delays due to stranding, by the following language: "It is hereby understood and agreed that effective as to all shipments made on and after date this policy is amended to cover as follows: "Free of particular average unless the vessel be *stranded,* sunk, burned, on fire or in collision, *in any, all or several of which events the insurers are liable for such loss by decay, injury or damage to the fruit as is occasioned thereby or occurs during or in consequence of delay resulting therefrom.* Insurers are liable also for such loss in consequence of delay resulting from any, all or several of the following causes; i. e. breakage of shaft, loss of blades from propeller, derangement or breakage of machinery, derangement or breakage of rudder and/or sternpost, whether or not the vessel be stranded, sunk, burned, or in collision, provided that in all cases the loss amounts to 10% after deducting 5% for ordinary loss.

"The foregoing conditions shall apply to the vessel carrying or due to carry the cargo insured hereunder." (Italics inserted.)

It is true that this rider recites liability for damage directly due to some disasters, such as fire, which direct damage is covered by the clause in the policy hereinafter quoted upon which plaintiff relies, but the reference to damage which is occasioned or occurs "during or in consequence of delay resulting therefrom," as thus expressly provided for in the rider, is not referred to in any part of the policy in force at the time of the stranding. Therefore, to say that without this rider the policy nevertheless covers what this rider expressly covered, and for which coverage a higher premium was charged, is an argument which is not convincing. The language of the policy upon which plaintiff relies is the following: "Touching the adventures and *perils* which the said Universal Insurance Company is contented to bear, and take upon itself, in this voyage, *they are of the seas,* men-of-war, fires, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes, or people, of what nation, condition or quality, soever, barratry of the Master and Mariners, *and all other perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of the said goods and merchandises, or any part thereof.* And in case of any loss or misfortune, it shall be lawful and necessary to and for the assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the insured or insurers, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; to the charges whereof, the said Universal Insurance Company will contribute according to the rate and quantity of the sum herein insured; having been paid the consideration for this insurance by the assured or his or their assigns, at and after the rate of as agreed." (Italics inserted.)

■ I do not think that, in the light of the authorities to which I have referred, it is correct to say that "the perils" of the sea above referred to, cover or were intended to cover, a situation such as is here presented, while I am satisfied that one of the very purposes of the rider was to include such a situation, because not otherwise included. In short, I do not think that the broad language of the initial paragraph of the main policy, which has just been referred to, is broad enough, standing by itself, to include liability on the part of the insurance company for delay due to stranding. Tempest and collision are just as much "a sea peril" as is stranding. None of these is specifically referred to in the clause of the policy just quoted. Indirect damage due to tempest and collision delay is not recoverable under such a

clause. See Taylor v. Dunbar, Pink v. Fleming and Perry v. Cobb, supra. Therefore, when, as here, "the sea peril," to wit, the stranding, was no more the proximate cause of the damage to the goods, but only the antecedent cause of the delay, there can be no recovery, at least according to the weight of English authority.

A word only is sufficient with respect to the other clause upon which defendant relies by its second special plea. I think that has no application whatsoever to the present case, because, as I interpret it, it relates only to situations where there has been some ingress of water into the vessel, and the damage referred to is clearly a water damage. That provision is as follows: "It is warranted by the assured, free from damage or injury from dampness, change of flavor or being spotted, discolored, musty or mouldy, except caused by actual contact of sea water with the articles damaged, occasioned by sea perils. In case of partial loss by sea damage to dry goods, cutlery or other hardware, and on shipments from ports and places East of the Cape of Good Hope, on gunny cloth, gunny bags or hides, the loss shall be ascertained by a separation and sale of the portion only of the contents of the packages so damaged, and not otherwise; and the same practice shall obtain as to all other merchandise, so far as practicable."

I am, of course, aware of the fact that there is a rule of law that in construing policies of this kind they must be liberally interpreted in favor of the insured, that is rather strictly interpreted against the insurance company which drew them. I do not mean to say that I disagree with the Corsicana Case, because, as just stated, I am not now called upon to apply it. The weight of authority as expressed by the cases cited, would seem to be contrary, both in England and this country, to the Corsicana decision. But I make this statement merely by way of dictum, because I rest my decision squarely upon the state of facts here, which are different from those in any of the authorities to which I have been referred. In other words, it is not necessary for me to determine whether, were the canceled rider not before me, by the weight of English or American authority, or both, the cause that is truly proximate, is the one not proximate in time, but proximate in efficiency; or whether, in any event, it must be shown, in order to render defendant liable, that the loss is proximately due to one of the known perils among which retardation or delay of the voyage should not be included.

Summing up my conclusion very briefly it is this: Where an insurance policy contains broad language, thus affording ground for argument both ways, that is, that it may, or it may not apply to a specific case, if the parties are found to have previously covered that specific case by a separate clause, which, however, they later annulled, and for which one of the parties, the insured, had agreed to pay more, then that is very persuasive evidence, if not, indeed, entirely conclusive, that the parties did not intend that such specific case should thereafter be covered by the policy.

Lastly, I find no error in the manner in which the question of this rider was raised. The object of pleadings ought to be to get all questions before the court as promptly as possible, and leave no ground for temporizing pleas or delays at the trial. I find that the ambiguity surrounding the language of the original policy permitted, in fact called for, a consideration of everything that had gone before. And to raise this rider by a special plea, as is done, I think is entirely consistent with our practice.

I will sign an order in conformity with this opinion overruling the demurrer, the practical effect of which will be to dispose of the entire case.